THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH CARTER, Defendant-Appellant.

First District (2nd Division)   No. 1—89—1015

Opinion filed March 31, 1992.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Howard D. Weisman, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Kenneth Carter, charged with aggravated battery and armed robbery, was convicted by a jury of aggravated battery and robbery and was sentenced to concurrent terms of 5 and 20 years, respectively. In this appeal, defendant contends that (1) the verdict for aggravated battery, premised upon use of a deadly weapon, was inconsistent with the jury's implicit rejection of the use of a dangerous weapon in the commission of the robbery, as evidenced by the verdict on the armed robbery charge; (2) the statute that permits the sentencing court to impose a more severe sentence upon a defendant who commits an offense in a place of worship violates the establishment clause of the first amendment to the United States Constitution; (3) the State failed to prove beyond a reasonable doubt that defendant was subject to Class X sentencing; and (4) the court erred in permitting the State to present certain rebuttal evidence. We affirm.

At defendant's jury trial, the State presented the following evidence. Just after 7 a.m. on March 15, 1988, Donald Valentini was walking west on Schiller at Leland, saying his rosary while en route to early morning mass at Immaculate Conception Church in the 1400 block of North Northpark on Chicago's North Side. At that time, defendant passed Valentini on the left. Valentini turned north on Leland, heading for the church, and defendant continued west on Schiller. Just as Valentini reached the mouth of an alley, defendant jumped out, holding a beer bottle over his head. Valentini looked at him while the two men had a short conversation, and he then started walking toward the church. Defendant walked with him on the left. The two men talked as they continued walking toward the church, and defendant lowered the bottle.

When Valentini opened the rear door to the church and entered the vestibule, defendant broke the bottle over his head. Valentini cried out for help, knowing that a priest would be in the church six steps below. Defendant continued to hit him about the head, but he paused when the priest appeared at the bottom of the stairs nearby. Valentini fell to the floor; defendant continued hitting him and yelled, "I'm going to kill you, you motherfucker." Although the priest could see what was occurring, he did not get a good look at Valentini's assailant, who then took Valentini's wallet from his pants pocket and ran off. The priest helped Valentini to his feet and walked him to the rectory, where the police were called. Valentini was taken by police to Lutheran General Hospital; he was treated and released. Approximately one month later, Valentini went to the police station to view mug books, from which he identified defendant as the man who had ac-

costed him. Two months later, Valentini attended a lineup, at which he identified defendant.

At the close of the State's case, defendant moved for a directed verdict, which the court denied. Defendant presented as his only witness Dorothy Jackson, the mother of his girl friend. According to Ms. Jackson, defendant lived with her and her family at 6844 South Oakley, on Chicago's South Side, from December 1987 until "the present time when he left." On the morning of the attack, she testified, defendant was with her in the living room, drinking coffee and watching video tapes.

Over defense objection and after much dispute about proper impeachment and rebuttal, the circuit court permitted the State to present, in its rebuttal case, testimony that when defendant was arrested in June 1988 for this incident, he gave as his address 1408 North Northpark, which is in the block where the offenses occurred. In addition, although defendant had supplied the Northpark address in May 1987 when arrested for a misdemeanor, he had given 6001 South Oakley as his address when arrested on an unrelated charge in March 1988, a few days after the instant offenses. Defendant had been in jail continuously from the day of his March 1988 arrest to and after his June 1988 arrest.

The circuit court gave jury instructions and verdict forms for robbery and battery as well as for the charged offenses of armed robbery and aggravated battery. As previously indicated, the jury returned guilty verdicts for robbery and aggravated battery.

At defendant's sentencing hearing, his counsel agreed with the prosecutor that defendant was "Class X eligible," and the State recounted defendant's prior convictions. The court then commented separately on the applicability of each of the mitigation and aggravation factors listed in sections 5—5—3.1 and 5—5—3.2, respectively, of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). After doing so, the court expressly rejected an extended-term sentence because, it acknowledged, defendant had to be sentenced as a Class X offender under section 5—5—3(c)(8) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)). The court then sentenced defendant to 20 years for the robbery and 5 years for the aggravated battery, to run concurrently with each other and with another sentence of 7½ years imposed for an unrelated October 1988 conviction for residential burglary.

## I

Defendant first contends that the aggravated battery verdict, *i.e.,*

guilty of battery with a deadly weapon, must be set aside because it is legally inconsistent with the jury's implicit verdict on the armed robbery charge, *i.e.*, not guilty of robbery with a dangerous weapon. Both crimes have as an essential element the existence of a weapon, he argues, and a weapon logically cannot have been both there and not there. To cure the inconsistency, he urges this court to exercise its discretion by reducing the aggravated battery verdict to a conviction for simple battery, pursuant to Illinois Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), and then to remand for resentencing on the battery.

The State counters that defendant waived consideration of this issue by not objecting to the verdict at trial or in his post-trial motion. Even if this court disagrees as to waiver, the State contends, the inconsistency is not plain error, so revising the verdict is inappropriate. In addition, the State argues that although the bottle/weapon existed during the battery, it no longer existed when defendant took Valentini's wallet, having shattered on impact. Even if the verdicts were inconsistent, the State offers alternatively, such inconsistency is permissible. Defendant replies that because the issue is one of insufficient proof of guilt of aggravated battery, he was under no obligation to raise it at the trial level in order to retain the right to appeal the issue. Even if he should have raised it below, he adds, the court may consider it now under the plain error doctrine.

As a preliminary matter, we must reject the State's assertion that defendant's failure to raise this issue at trial or in his post-trial motion necessarily results in loss of the right to appeal the issue. To be sure, this is the general rule, but an exception exists for a defendant's challenge to the sufficiency of evidence. *People v. Kennard* (1990), 204 Ill. App. 3d 641, 657, 561 N.E.2d 1188, 1197.

Legal inconsistency occurs "when a verdict of guilty is premised on the existence of an element of the offense and a verdict of not guilty [for a simultaneous act] is premised on the nonexistence of that same element." (*People v. Scherzer* (1989), 179 Ill. App. 3d 624, 648, 534 N.E.2d 1043, 1060.) Although certain inconsistencies between verdicts are permissible (*People v. Solis* (1991), 216 Ill. App. 3d 11, 20, 576 N.E.2d 120, 125), legal inconsistency will render a criminal verdict invalid, warranting reversal. *People v. Frias* (1983), 99 Ill. 2d 193, 197-204, 457 N.E.2d 1233, 1235-38.

The crimes at issue here are robbery, armed robbery, battery, and aggravated battery. The latter, as alleged in this case, is defined as intentionally or knowingly causing bodily harm, without legal justification, while using a deadly weapon. (Ill. Rev. Stat. 1987, ch. 38, par.

12—4(b)(1).) Armed robbery, similarly, is the taking of another's property from his person or presence while carrying or otherwise armed with a dangerous weapon; without the weapon, the crime is robbery. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—2, 18—1.) Defendant's apparent belief that the jury had no choice but to consider the two charged crimes here as a single event is the keystone of his theory: if the weapon was found not to exist during the robbery, it could not exist during the battery.

■ Defendant's premise is faulty, so his logic fails. Although the jury could have viewed this related series of acts to be an armed robbery despite the timing of the shattering of the bottle (*People v. Blake* (1991), 144 Ill. 2d 314, 322, 579 N.E.2d 861, 865), it was not obliged to do so. On the contrary, the jury could have decided that the State had not demonstrated the "necessary concurrence of events" to justify an armed robbery conviction (*Blake*, 144 Ill. 2d at 322, 579 N.E.2d at 865); it could have decided, for example, that defendant's decision to relieve Valentini of his wallet was merely an afterthought. Alternatively, the disparity in the verdicts could reflect jury leniency. (*People v. Hyman* (1972), 8 Ill. App. 3d 382, 385, 290 N.E.2d 627, 629.) Under either scenario, the verdicts would not be inconsistent because they would not be premised on both the existence and the nonexistence of the bottle. Accordingly, we need not alter the jury's decision here.

## II

Defendant next contends that subsection 5—5—3.2(a)(10) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(10)),[1] relied upon by the circuit court in imposing sentence, violates the establishment clause of the first amendment to the United States Constitution. He claims that the statute has no arguable secular purpose, has as its primary effect the advancement of religion, and creates excessive government entanglements. Because the existence of even one of these defects will render a statute unconstitutional, he argues, his sentence is invalid.

The State presents a dual challenge to defendant's standing to contest the statute's constitutionality. It posits first that defendant was sentenced under the Class X statute, not this one, and the court did not ultimately impose a more severe sentence than the 30-year

---

[1]Public Act 86—1418 amended the statute, adding another factor and renumbering the paragraph at issue as 5—3—3.2(a)(11), effective January 1, 1991.

maximum for Class X offenders. Moreover, having waited to raise this issue until appeal, defendant should be deemed to have waived it. Even if we reach the merits, the State asserts, the statute has none of the defects defendant ascribes to it. Defendant replies that the record unambiguously reveals that the judge employed the statute while sentencing him, giving him standing to challenge the statute's constitutionality. Furthermore, a criminal defendant need not attack a statute's unconstitutionality at trial in order to preserve the issue for review, the State's citation to a contrary appellate court decision notwithstanding.

Section 5—5—3.2(a) of the Unified Code of Corrections states:

"The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence [for a felony]:

* * *

(10) the offense took place in a place of worship or on the grounds of a place of worship, immediately prior to, during or immediately following worship services. For purposes of this subparagraph, 'place of worship' shall mean any church, synagogue or other building, structure or place used primarily for religious worship." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(10).

As a preliminary matter, we reject the State's standing argument; at the sentencing hearing, the court stated outright that "I certainly think [the aggravating factor at issue] applies." (*People v. P.H.* (1991), 145 Ill. 2d 209, 220, 582 N.E.2d 700, 704 (one may question a statute's constitutionality after sustaining some direct injury due to enforcement thereof).) Also, despite the admittedly muddled history of the relationship between waiver and constitutional challenges in Illinois (*People v. Ward* (1990), 194 Ill. App. 3d 229, 232 n.1, 550 N.E.2d 1208, 1210 n.1; O'Neill, *Waiver of Constitutional Issues in Criminal Cases: Confusion in the Illinois Supreme Court*, 11 N. Ill. U. L. Rev. 55 (1990)), at the present time there is no doubt that the waiver rule is inapplicable when the issue raised on appeal is that of a statute's unconstitutionality. (*People v. Bryant* (1989), 128 Ill. 2d 448, 454, 539 N.E.2d 1221, 1224.) We further note that, although it is our duty to strike down unconstitutional statutes, we must presume that a statute is valid and must construe it as such if reasonable to do so, resolving doubts in favor of constitutionality. (*P.H.*, 145 Ill. 2d at 220-21, 582 N.E.2d at 705; *People v. Williams* (1991), 143 Ill. 2d 477, 481, 577 N.E.2d 762, 763.) In particular, sentencing statutes are presumed con-

stitutional. *People v. Clark* (1981), 102 Ill. App. 3d 414, 423, 429 N.E.2d 1255, 1261.

The establishment clause of the first amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion ***." (U.S. Const., amend. I.) Under the incorporation doctrine of the fourteenth amendment, the establishment clause applies to the States as well as to the Federal government. (*Cantwell v. Connecticut* (1940), 310 U.S. 296, 84 L. Ed. 1213, 60 S. Ct. 900.) In *Lemon v. Kurtzman* (1971), 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105, the Supreme Court held that the establishment clause was intended to protect against "three main evils[:] *** 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" (403 U.S. at 612, 29 L. Ed. 2d at 755, 91 S. Ct. at 2111, quoting *Walz v. Tax Comm'n* (1970), 397 U.S. 664, 668, 25 L. Ed. 2d 697, 701, 90 S. Ct. 1409, 1411.) Under *Lemon*, to pass constitutional muster, a statute's legislative purpose must be secular; its principal or primary effect cannot advance or inhibit religion; and it may not "foster 'an excessive government entanglement with religion.'" (403 U.S. at 612-13, 29 L. Ed. 2d at 755, 91 S. Ct. at 2111, quoting *Walz*, 397 U.S. at 674, 25 L. Ed. 2d at 704, 90 S. Ct. at 1414.) Despite the Supreme Court's professed "unwillingness to be confined to any single test or criterion in this sensitive area" (*Lynch v. Donnelly* (1984), 465 U.S. 668, 679, 79 L. Ed. 2d 604, 613, 104 S. Ct. 1355, 1362), it nevertheless applies *Lemon* with regularity. (*County of Allegheny v. ACLU* (1989), 492 U.S. 573, 592 n.44, 106 L. Ed. 2d 472, 493 n.44, 109 S. Ct. 3086, 3100 n.44.) We do so here as well.[2]

Defendant contends that the statute's unacceptable nonsecular purpose is to "singl[e] out for harsher penalty those crimes committed

---

[2]We are aware that, as Justice Easterbrook cautions, *Lemon* may have lost its tang. (*Harris v. City of Zion* (7th Cir. 1991), 927 F.2d 1401, 1424 (Easterbrook, J., dissenting), *cert. denied* (1992), ____ U.S. ____, 120 L. Ed. 2d 920, 112 S. Ct. 3054.) Indeed, in *Lee v. Weisman* (1991), 505 U.S. ____, 120 L. Ed. 2d 467, 112 S. Ct. 2649, the United States Supreme Court has been asked to reconsider *Lemon* and to replace the relatively strict, separationist *Lemon* test with a more lenient one that turns on coercion of belief. (505 U.S. ____, 120 L. Ed. 2d 467, 112 S. Ct. 2649.) On November 6, 1991, the Court heard oral argument in *Lee*, in which the question is whether saying prayers at a graduation ceremony for a public junior high school violates the establishment clause. Because *Lee* concerns school children, a specially protected group in first amendment jurisprudence, and because the new standard, if adopted, would be less favorable to defendant than *Lemon*, we see no reason to await the Court's decision before ruling on the challenge here.

in sectarian locations," thereby conveying the impermissible message that those who attend religious services are "more deserving of government protection." Defendant offers no citation to legislative history or other factual support for his position, however; instead, he merely speculates as to the General Assembly's intent. The State counters that the statute's purpose is to protect worshipers from criminals who would interfere with their constitutional right to free exercise of religious belief. The only legislative history cited by the State is an introduction by Representative Howard B. Brookins, the sponsor of the bill. Speaking of an earlier version of the bill, which would have elevated a simple battery to an aggravated battery if committed on the property of a house of worship, Representative Brookins stated, "[T]his bill [will] give the clergy and parishioners the same protection which our police officers, teachers and nurses have." 83d Ill. Gen. Assem., House Proceedings, March 24, 1983, at 44 (statements of Representative Brookins).

■ To warrant a finding that a statute is unconstitutional for lack of secular purpose, a challenger must demonstrate conclusively that the statute "was motivated *wholly* by religious considerations." (Emphasis added.) (*Lynch*, 465 U.S. at 680, 79 L. Ed. 2d at 614, 104 S. Ct. at 1362.) Moreover, "[e]ven if some legislators were motivated by a conviction that [clergy and worshipers] in particular w[ere] valuable and worthy of protection, that alone would not invalidate [a statute] because what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators." (Emphasis in original.) (*Board of Education of the Westside Community Schools v. Mergens* (1990), 496 U.S. 226, 249, 110 L. Ed. 2d 191, 215, 110 S. Ct. 2356, 2371 (opinion of O'Connor, J., joined by Rehnquist, C.J., and White and Blackmun, JJ.).) Defendant has presented no evidence whatsoever from which we can glean an impermissible purpose.

In addition, we observe that courts usually will defer to a legislature's articulated secular purpose. (*Edwards v. Aguillard* (1987), 482 U.S. 578, 586, 96 L. Ed. 2d 510, 521, 107 S. Ct. 2573, 2579.) Here, the sole purpose articulated (to protect places of worship, and those who use them, to the same extent as certain other classes of victims) provides the requisite secular basis, particularly when coupled with the implicit purpose of every aggravation factor, which is to permit more severe punishment for those who commit crimes that the sovereign finds more offensive. Places of worship reach out and extend an invitation to the public; doors are unlocked; security is relaxed. The provision here merely reflects the legislature's determination that crimes committed in such places, like crimes committed against the

aged, are more repugnant to the community than, for example, crimes committed against convenience stores and those who use them. As such, it acknowledges our country's long tradition of respect for the exercise of religion, as evidenced by the first amendment's free exercise clause.[3] Indeed, were we to extend defendant's reasoning to its logical conclusion, we would have to hold that the free exercise clause itself, if enacted by the General Assembly, would violate the establishment clause. We decline to follow this path.

Defendant next claims, again without evidentiary support, that the statute's primary effect is to advance religion because it confers the benefit of special government protection exclusively, not just incidentally, on clergy and worshipers. The State counters, also without support, that the statute's effect is to deter and reduce crime in general. Neither addresses the issue squarely.

■ The primary effect of this sentencing provision, like any other, falls on criminals rather than on their victims. We agree with defendant that if the statute may be said to confer a benefit on anyone, the benefit falls primarily on those who own houses of worship and those who attend religious services therein, but this benefit is too indirect to violate the establishment clause. (*Walz*, 397 U.S. at 675-76, 25 L. Ed. 2d at 705, 90 S. Ct. at 1415.) Moreover, to "advance" religion is to "endorse," "favor," or "promote" it, that is, "at the very least, *** [to] appear[] to take a position on questions of religious belief or [to] 'mak[e] adherence to a religion relevant in any way to a person's standing in the political community.'" (*County of Allegheny v. ACLU* (1989), 492 U.S. 573, 593-94, 106 L. Ed. 2d 472, 494-95, 109 S. Ct. 3086, 3101, quoting *Lynch*, 465 U.S. at 687, 79 L. Ed. 2d at 619, 104 S. Ct. at 1367 (O'Connor, J., concurring).) We view the sentencing statute at issue as similar to a New Mexico statute that made criminal the defacing of a church. When this statute was challenged on first amendment grounds, the court of appeals of New Mexico held that the statute did not "advance" religion but merely provided a penalty for damaging property. (*State v. Vogenthaler* (App. 1976), 89 N.M. 150, 152, 548 P.2d 112, 114.) We cannot say that the primary effect of the statute at issue is not similarly benign.

---

[3]We note that the State's suggested statutory purpose (prohibiting interference with the free exercise of religion) was mentioned during the legislative discussions as well. We do not find this argument persuasive, however, because it fails to recognize that the first amendment prohibits such interference only by the sovereign, not by criminals.

■ Lastly, defendant asserts that the court's use of this statute to impose a heavier sentence constitutes "excessive entanglement" with religion by the State. He is mistaken. The analysis for excessive entanglement includes examination of "the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority" (*Lemon*, 403 U.S. at 615, 29 L. Ed. 2d at 757, 91 S. Ct. at 2112), an analysis that defendant's bald assertion of entanglement omits. Defendant has not demonstrated how the statute at issue here either "benefits" religious institutions other than indirectly, as previously indicated, or how it provides government "aid" within the meaning of *Lemon*, or how it establishes the continuing relationship between religious institutions and the government, such as a government's "day-to-day surveillance or administration of religious activities," that is the hallmark of "excessive entanglement." (*Board of Education v. Mergens* (1990), 496 U.S. 226, 253, 110 L. Ed. 2d 191, 217, 110 S. Ct. 2356, 2373 (opinion of O'Connor, J., joined by Rehnquist, C.J., and White and Blackmun, JJ.).) Accordingly, defendant has failed to prove any entanglement, and therefore, we hold that he has not met the standard of the third prong of the *Lemon* test.

## III

Next, defendant asks this court to vacate his sentence and remand for resentencing because the State did not meet the statutory criteria for sentencing him as a Class X offender. Defendant's specific argument is that the State failed to offer proof beyond a reasonable doubt of the dates of his prior crimes and convictions. Moreover, he asserts, having failed to proffer such evidence at his original sentencing hearing, the State is barred by the double jeopardy clause of the fifth amendment to the United States Constitution from resentencing him as a Class X offender.

The State responds that the case law on the quantum of proof required for sentencing under this statute is unsettled, urging us to await the Illinois Supreme Court's pronouncement on the question in *People v. Williams* (1992), 149 Ill. 2d 467. Even if its burden were proof beyond a reasonable doubt, the State argues, circumstantial evidence may be used to prove prior convictions (*People v. Harris* (1987), 157 Ill. App. 3d 70, 74, 510 N.E.2d 107, 111, *appeal denied* (1987), 116 Ill. 2d 567, 515 N.E.2d 118), and here defendant's arrest records and presentence investigation report suffice. Furthermore, the State contends, defendant waived this issue because his counsel replied, "That's correct, Judge" when the assistant State's Attorney

commented at the outset of the sentencing hearing that "defendant is now Class X eligible," and his counsel did not object when the circuit court later stated that "all parties would agree [the Class X sentencing statute] is applicable." As for defendant's double jeopardy argument, of the appellate courts that have considered the issue, only the second district supports defendant. *People v. Shelton* (4th Dist. 1991), 208 Ill. App. 3d 1094, 567 N.E.2d 680 (double jeopardy no bar); *People v. Brooks* (1st Dist. 1990), 202 Ill. App. 3d 164, 559 N.E.2d 859 (same); *People v. Chandler* (1st Dist. 1991), 218 Ill. App. 3d 97, 578 N.E.2d 155 (same); contra *People v. Hamilton* (2d Dist. 1990), 198 Ill. App. 3d 108, 555 N.E.2d 785, *appeal allowed* (1990), 133 Ill. 2d 564, 561 N.E.2d 699 (consolidated with *Williams*).

Defendant replies that his counsel conceded only that he was eligible for Class X sentencing, not that he waived the State's obligation to prove beyond a reasonable doubt that the statute applied here. He further notes that, because the sentencing error is so grave, it amounts to plain error, allowing this court to review it even though his counsel failed to object. Lastly, he argues that what the State calls circumstantial evidence of his prior crimes is nothing but assumptions, an improper basis for sentencing.

Section 5—5—3(c)(8) of the Unified Code of Corrections states:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after [February 1, 1978]; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8).

■ As noted above in Part I, the waiver rule is inapplicable when a defendant challenges the sufficiency of the evidence. (*People v. Kennard* (1990), 204 Ill. App. 3d 641, 657, 561 N.E.2d 1188, 1197.) We assume, for this analysis, that the State must prove beyond a reasonable doubt the chronological order of offense and conviction dates for Class X sentencing (*Kennard*, 204 Ill. App. 3d at 660, 561 N.E.2d at 1199; *People v. Harris* (1987), 157 Ill. App. 3d 70, 74, 510 N.E.2d 107, 111, *appeal denied* (1987), 116 Ill. 2d 567, 515 N.E.2d 118), a burden that the State may satisfy with circumstantial evidence (*People v. Stewart* (1989), 186 Ill. App. 3d 833, 838, 542 N.E.2d 915, 919,

*appeal denied* (1989), 128 Ill. 2d 670, 548 N.E.2d 1076). We conclude that the State met its burden here.

At the sentencing hearing, the court and both counsel could see from the defendant's presentence investigation report that he had three prior convictions as an adult, two of which met the statutory timing criteria.[4] According to the report and defendant's arrest record, he was arrested in June 1983 and subsequently pleaded guilty to robbery and aggravated battery in January 1984. Defendant's next applicable offense and conviction occurred in 1985. The crime at issue here was committed in March 1988, with conviction in March 1989. Therefore, the only fact needed to satisfy the statute, but not directly presented in the report or the arrest record, was the date on which defendant committed the crimes for which he was arrested in 1983.

As the State suggests, it needed to prove beyond a reasonable doubt only that these crimes occurred after February 1, 1978, the effective date of the statute. Because the limitations period for the 1983 crimes was three years (Ill. Rev. Stat. 1983, ch. 38, par. 3—5), the 1983 arrest date indicates that he committed the crimes no earlier than 1980. Consequently, the court could infer from the 1983 arrest date that the crimes occurred after the 1978 effective date of the statute. (*Kennard*, 204 Ill. App. 3d at 660-61, 561 N.E.2d at 1200 (court may infer dates despite lack of direct evidence); see also *People v. Kinzer* (1991), 214 Ill. App. 3d 790, 574 N.E.2d 155; but see *Shelton*, 208 Ill. App. 3d 1094, 567 N.E.2d 680; *Brooks*, 202 Ill. App. 3d 164, 559 N.E.2d 859; *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942, *appeal denied* (1990), 129 Ill. 2d 570, 550 N.E.2d 563; *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130 (State did not meet burden when it failed to present evidence of dates offenses were committed).) The lack of direct evidence on this point does not lead inexorably to a reasonable doubt that defendant did not qualify for Class X sentencing. Accordingly, we hold that Class X sentencing was proper. In light of our ruling, we need not address defendant's double jeopardy claim.

## IV

Defendant's final contention on appeal is that the circuit court erred in allowing the State to present, in its rebuttal case, Detective Jon Cole's testimony that at defendant's arrest three months after

---

[4]The last of these was ineligible for consideration because the subsequent arrest and conviction occurred after the commission of the crime here but before the conviction at issue.

the incident, defendant gave as his address a street number on the same block as the church. He argues that this evidence was neither proper impeachment of a defense witness nor rebuttal on a material issue. Admission of this evidence constitutes reversible error, he contends, warranting a new trial. The State counters that the testimony was admissible for two reasons: it contradicted defense evidence on a material matter (Ms. Jackson's testimony, which gave the impression that defendant had no connection to the crime scene), and its materiality is such that it could have been used in the State's case in chief.

Courts define rebuttal evidence as "that which [the State presents] to explain, repel, contradict, or disprove evidence presented by the accused." (*People v. Rios* (1986), 145 Ill. App. 3d 571, 584, 495 N.E.2d 1103, 1113.) Such evidence is generally inadmissible if it contradicts previously admitted evidence on a merely collateral matter, however, unless a defendant has raised the collateral issue in his own case. (*People v. Dale* (1989), 189 Ill. App. 3d 704, 726, 545 N.E.2d 521, 535-36, *appeal denied* (1990), 129 Ill. 2d 567, 550 N.E.2d 560.) The circuit court's decision to admit such evidence is reversible only upon a showing of abuse of discretion. *Dale*, 189 Ill. App. 3d at 726, 545 N.E.2d at 536.

■ We conclude that the testimony at issue had a tendency to "explain, repel, contradict, or disprove" Ms. Jackson's testimony, so the court did not err in admitting it. In fact, the evidence at issue is, as the trial court described it, "very serious, damaging evidence against the defendant" in that the arresting officer's testimony was the only direct evidence linking defendant to the neighborhood of the crime in this "single-finger I.D." case. In a close credibility contest like this one, such evidence cannot be deemed merely collateral. Accordingly, we hold that the testimony was proper rebuttal and thus its admission constituted no abuse of discretion.

Judgment affirmed.

SCARIANO and McCORMICK, JJ., concur.