643 So.2d 625 (1994)
Jason TODD, Appellant,
v.
STATE of Florida, Appellee, and
Joseph Hugh HUTCHINSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 92-4116, 92-4136.
District Court of Appeal of Florida, First District.
August 22, 1994.
Rehearing Denied October 11, 1994.
*627 John G. Crabtree of Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, P.A., Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., James W. Rogers, Sr. Asst. Atty. Gen., Office of Atty. Gen., Tallahassee, Michael J. Neimand, Asst. Atty. Gen., Office of Atty. Gen., Dept. of Legal Affairs, Miami, for appellee.
Mitchell Horwich, Coral Gables, Marc D. Stern and Lois C. Waldman, American Jewish Congress, New York City, Thomas A. Horkan, Jr., Florida Catholic Conference, Tallahassee, for amici curiae.
Rehearing Denied as to 94-4116 only October 11, 1994.
MINER, Judge.
In these two cases, which have been consolidated for the purposes of briefing, oral argument and opinion, the appellants challenge, on constitutional grounds, section 806.13(2), Florida Statutes (1991), which makes it a felony to deface a church, synagogue, mosque or other place of worship or its religious contents. Additionally, appellant Todd, a minor at the time of sentencing, contends that the trial court, contrary to section 39.059(7), Florida Statutes (1991), failed to make written findings of fact or state in writing the reasons for its decision to impose adult sanctions against him. Finding no merit in such argument, we affirm on that point without further discussion. As to the constitutional challenges to section 806.13(2), which are issues of first impression in Florida, we conclude that the statute does not violate any constitutional command and therefore affirm.
The facts in these two cases are without dispute. Appellants were charged with three counts of criminal mischief each in violation of section 806.13(2), which makes it a third-degree felony to willfully and maliciously cause between $200 and $1,000 damage to a place of worship or its religious contents. Specifically, appellants were accused of spray painting three churches in Columbia County with anti-religious symbols and words. Appellants filed motions to dismiss, asserting state and federal equal protection and religion establishment challenges to the statute. Those motions were denied, and appellants subsequently pled no contest to the charges, reserving their rights to appeal the denial of the motions to dismiss. They were convicted and sentenced to serve 48 hours in jail followed by five years of probation and to perform 150 hours of community service for each count, with the probationary sentences to be served consecutively. This appeal followed.

STANDARD OF REVIEW
This court is obligated to honor the strong presumption in favor of the constitutionality of statutes. All doubt will be resolved in favor of the constitutionality of a statute, and an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt. State v. Kinner, 398 So.2d 1360, 1363 (Fla. 1981).

I. ESTABLISHMENT CLAUSE

Appellants challenge section 806.13, Florida Statutes (1991), and particularly that portion of the statute which makes it a felony to deface a place of worship,[1] asserting that it *628 violates the Establishment Clauses of both the state and federal constitutions. The Establishment Clause of the First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."[2] Article I, Section 3, of the Florida Constitution is substantially the same. It provides: "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."[3] The Establishment Clause was intended to afford protection against sponsorship, financial support, and active involvement of the sovereign in religious activities. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 755 (1971). Three tests have been developed to determine whether a statute violates the Establishment Clause. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and third, the statute must not foster excessive government entanglement with religion. Id. at 612-13, 91 S.Ct. at 2111, 29 L.Ed.2d at 755.
Although not controlling, we find People v. Carter, 228 Ill. App.3d 526, 170 Ill.Dec. 55, 592 N.E.2d 491, appeal denied, 146 Ill.2d 635, 176 Ill.Dec. 807, 602 N.E.2d 461 (1992), persuasive in determining that section 806.13(2) does not violate the Establishment Clause. In Carter, the defendant raised an establishment challenge to a criminal statute that permitted the sentencing court to impose a more severe sentence upon a defendant who committed an offense in a place of worship. In determining that the statute did not violate the Establishment Clause, the court applied the tests announced in Lemon. The court found that the articulated purpose, i.e., to protect places of worship and those who use them, provided the requisite secular basis. The statute merely reflected the legislature's determination that crimes committed in such places, like crimes against the elderly, are more repugnant to the community than some other offenses. It acknowledges our country's long tradition of respect for the free exercise of religion. Id. at 497, 91 S.Ct. at 2053. In determining that the statute's primary effect did not advance religion, the court found that the statute's primary effect falls on criminals rather than their victims. While some benefit was conferred on those who attend religious services in houses of worship, the court concluded that such benefit was too indirect to violate the Establishment Clause. Id. at 498, 91 S.Ct. at 2053-54. Citing State v. Vogenthaler, 89 N.M. 150, 548 P.2d 112 *629 (Ct.App. 1976), which upheld a statute that criminalized defacing a church, the court noted that statutes which provide penalties for damaging property do not advance religion. Id. As to the question of excessive entanglement, the court found none, because the statute did not benefit religious institutions other than indirectly and it did not establish a continuing relationship between the religious institutions and government which required day-to-day surveillance or administration of religious activities. Id. After considering the Lemon tests, we agree with the result in Carter, as indicated in the following analysis.
A. Turning to the first test, secular legislative purpose, as explained in Corporation of the Presiding Bishop of the Church of Jesus Christ of the Latter-Day Saints v. Amos, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987), this does not mean that the law's purpose must be unrelated to religion  that would amount to a requirement that the government show a callous indifference to religious groups, which the Establishment Clause has never been interpreted to mean. Rather, the purpose requirement is aimed at preventing the government from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters. To warrant a finding that a statute is unconstitutional for lack of secular purpose, the challenge must demonstrate conclusively that the statute was motivated wholly by religious consideration. Lynch v. Donnelly, 465 U.S. 668, 680, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604, 614 (1984). The relevant inquiry is the legislative purpose of the statute and not the possible religious motives of the legislators. Board of Educ. of Westside Community v. Mergens, 496 U.S. 226, 249, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191, 215 (1991). Edwards v. Aguillard, 482 U.S. 578, 586-87, 107 S.Ct. 2573, 2579, 96 L.Ed.2d 510, 521 (1987) (court is normally deferential to state's articulation of a secular purpose).
In the instant case, the Staff Summary and Analysis concerning the addition of subsection 806.13(2) provides: "It is believed that legislation of this type is necessary to curtail the increasing number of criminal mischief acts committed in a place of worship and in cemeteries." Since the legislature's articulated purpose was to deter criminal mischief, it cannot be said that the statute lacks a secular purpose. See Lynch (concluding that city's inclusion of nativity scene in its Christmas display did not violate the Establishment Clause, because there were legitimate secular purposes for its inclusion, i.e., to celebrate the holiday and depict the origins of it); Lemon (where statutes for providing financial support to non-public schools and paying supplements to teachers in non-public schools were aimed at improving secular education in all schools, the legislative purpose was not to advance religion, rather the state had a legitimate concern in maintaining minimum standards in all schools); Committee for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973) (where legislature specified purposes for law granting financial aid to non-public schools were to preserve health and safe environment for all children, promote pluralism and diversity, and to avoid overburdening the public school system, all those were legitimate secular considerations and did not require a finding of unconstitutionality under the first test). Appellants' argument ignores this stated legislative purpose, to which we give great deference, and instead relies on their assumption of the legislative purpose.
Appellant's reliance on Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), for the notion that a statute which confers a benefit only on religious institutions or organizations cannot have a secular purpose, to prove that section 806.13 necessarily lacks a secular purpose is misplaced for two reasons. First, Bullock dealt with a tax exemption which directly benefited religious organizations as it granted the exemption to religious literature. Here, the statute does not directly benefit religious organizations in that it merely increases the penalty when criminal mischief is committed to houses of worship. Carter. Second, unlike Bullock, where the exemption only applied to religious literature, an increased penalty under section 806.13 also applies to criminal mischief involving telephone services. *630 § 806.13(3), Fla. Stat. (1991). Thus, Bullock does not compel a finding of a nonsecular purpose.
B. Turning to the second test, the principal or primary effect of advancing religion, the law's purpose or effect must be to "endorse" religion for the law to be violative of the Establishment Clause. County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472, 494 (1989). The government is prohibited from conveying the message that religion or a particular religious belief is favored or preferred. Id. at 593, 109 S.Ct. at 3101, 106 L.Ed.2d at 494. As explained in Corporation of Presiding Bishop, 483 U.S. at 337, 107 S.Ct. at 2869, 97 L.Ed.2d at 283, for a law to have forbidden effects, it must be fair to say that the government itself has advanced religion through its own activities and influence.
Here, although appellants have argued that section 806.13(2)'s primary effect or purpose is to benefit houses of worship, the statute clearly shows that its primary purpose is to punish those who deface all sorts of property, including religious property. Admittedly, there is some benefit to religious institutions since there is a greater deterrence for criminal mischief involving religious property, but such benefit is indirect. Carter. As noted in Bullock, 489 U.S. at 10, 109 S.Ct. at 897, 103 L.Ed.2d at 10, government policies with secular policies may incidentally benefit religion. Thus, it cannot be said that the statute's primary effect is to advance or endorse religion.
In so saying, we once again reject appellants' reliance on Bullock's breadth analysis. This is not a situation where the law only applies to religious institutions; an enhanced penalty also applies to criminal mischief involving telephone services.
C. As for the third test, that of excessive entanglement, appellant has argued that the statute causes excessive entanglement because the state will have to determine what an "other place of worship" is and what "religious articles" are. The entanglement which is forbidden is comprehensive, discriminating and continuing state surveillance, Lynch, 465 U.S. at 684, 104 S.Ct. at 1365, 79 L.Ed.2d at 617; day-to-day surveillance or administration of religious activities, Board of Educ. of Westside Community Schs. v. Mergens, 496 U.S. 226, 252-53, 110 S.Ct. 2356, 2373, 110 L.Ed.2d 191, 217 (1990); and programs whose very nature are apt to entangle the state in the details of administration, Lemon, 403 U.S. at 614-15, 91 S.Ct. at 2112, 29 L.Ed.2d at 757. We fail to see how determining whether defaced property is a place of worship or a religious article therein constitutes the type of entanglement contemplated by the Establishment Clause test. Accord Carter.
In conclusion, because section 806.13(2) passes muster under each of the tests set out in Lemon, the trial court's order denying appellants' motions to dismiss should be affirmed as to the Establishment Clause issue.

II. EQUAL PROTECTION

Appellants argue that they are denied equal protection, because section 806.13 treats acts of criminal mischief differently depending upon whether they involve secular or religious property. In regard to equal protection, the Florida Constitution provides that "[a]ll natural persons are equal before the law," and the Fourteenth Amendment to the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." Art. I, § 2, Fla. Const.; U.S. Const. amend. XIV, § 1. The Equal Protection clause does not, however, deny to states the power to treat different classes of persons in different ways so long as such classifications are reasonably related to a legitimate state interest. Stall v. State, 570 So.2d 257, 262 n. 7 (Fla. 1990), cert. denied sub nom. Long v. Florida, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991).
In determining the equal protection challenge in the instant case, it has been conceded that the rational basis test is the appropriate standard. See Corporation of Presiding Bishop, 483 U.S. at 338-39, 107 S.Ct. at 2870, 97 L.Ed.2d at 285 (laws affording a uniform benefit to all religions should be analyzed under the rational basis test). *631 Thus, the question before us is whether the government has chosen a rational classification to further a legitimate end.
As discussed under Issue I, subsection A, the state has a legitimate interest in deterring crime. Moreover, as indicated in the staff summary and analysis, there is an increasing number of criminal mischief acts perpetrated against religious institutions. The statute's enhanced penalties for acts against such institutions are rationally related to a legitimate state interest. Therefore, the law does not violate the Equal Protection Clause. Walker v. State, 501 So.2d 156 (Fla. 1st DCA 1987) (assault and battery statute which divides people for sentencing purposes into two classes, i.e., those subject to the discipline of the school and who are not, did not violate the Equal Protection Clause, because the legislative aims to maintain and protect the integrity of the school setting and standing of teachers as role models were legitimate objectives, and the statute's effect, i.e., enhancing the penalty from a misdemeanor to a felony for battery of a school board employee when the defendant is not subject to school discipline, was rationally related to achieve the intended end). Consequently, the trial court's order should be affirmed as to the equal protection issue.
AFFIRMED.
SMITH, Senior Judge, and PADOVANO, PHILIP J., Associate Judge, concur.
NOTES
[1] Section 806.13 provides as follows:

806.13 Criminal mischief. 
(1)(a) A person commits the offense of criminal mischief if he willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto.
(b)1. If the damage to such property is $200 or less, it is a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
2. If the damage to such property is greater than $200 but less than $1,000, it is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
3. If the damage is $1,000 or greater, or if there is interruption or impairment of a business operation or public communication, transportation, supply of water, gas or power, or other public service which costs $1,000 or more in labor and supplies to restore, it is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(2) Any person who willfully and maliciously defaces, injures, or damages by any means any church, synagogue, mosque, or other place of worship, or any religious article contained therein, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the damage to the property is greater than $200.
(3) Whoever, without the consent of the owner thereof, willfully destroys or substantially damages any public telephone, or telephone cables, wires, fixtures, antennas, amplifiers, or any other apparatus, equipment, or appliances, which destruction or damage renders a public telephone inoperative or which opens the body of a public telephone, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084; provided, however, that a conspicuous notice of the provisions of this subsection and the penalties provided shall have been posted on or near the destroyed or damaged instrument and visible to the public at the time of the commission of the offense.
(4) Any person who violates a provision of this section may, in addition to any other criminal penalty, be required to pay for the damages caused by such offense.
(Emphasis added.)
[2] The First Amendment is applicable to the states through the Fourteenth Amendment. Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 139-40, 107 S.Ct. 1046, 1048, 94 L.Ed.2d 190, 197 (1987).
[3] Because the language regarding establishment in the Florida constitution parallels the language of the First Amendment, federal law will be of great value in determining issues under Florida's constitution. See 25A Fla. Stat. Ann. 79 (1991) (Commentary).