Joshua BURKE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1006–CR–660.

Court of Appeals of Indiana.

Feb. 21, 2011.

Transfer Denied May 12, 2011.

Victoria L. Bailey, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Joshua Burke appeals his conviction for Class B felony burglary. Burke contends that Indiana Code section 35–43–2–1(1)(B)(ii), which enhances burglary from a Class C felony to a Class B felony if the

building or structure burgled is a structure used for religious worship, violates the Establishment Clause of the First Amendment to the United States Constitution and Article 1, Section 4 of the Indiana Constitution. We conclude that Section 35–43–2–1(1)(B)(ii) does not violate the Establishment Clause of the First Amendment because it has a secular legislative purpose, its primary effect neither advances nor inhibits religion, and it does not foster an excessive government entanglement with religion. We also conclude that Section 35–43–2–1(1)(B)(ii) does not violate Article 1, Section 4 of the Indiana Constitution because it does not materially burden Section 4's core constitutional value. We therefore affirm the trial court.

## Facts and Procedural History

One night in October 2009, Burke and two companions burglarized the True Gospel Assembly Church on South Randolph Street in Indianapolis. Burke served as a lookout while his companions broke into the church. The companions spray-painted the walls and destroyed an organ and several guitars. Burke carried away an amplifier from the church.

The State charged Burke with Class B felony burglary, Ind.Code § 35–43–2–1(1)(B)(ii), and Class D felony theft, *id.* § 35–43–4–2(a). The burglary count was charged as a Class B felony because the State alleged that Burke burglarized a structure used for religious worship.

Burke filed a motion to dismiss the Class B felony burglary count. He argued that the statutory provision enhancing burglary to a Class B felony where the building is a structure used for religious worship violates Article 1, Section 4 of the Indiana Constitution. The trial court denied the motion after a hearing.

Burke renewed his motion to dismiss at the start of his bench trial. The trial court again denied the motion. The parties offered and the trial court admitted a joint stipulation of facts. Burke moved for a judgment on the evidence for the reasons stated in his motion to dismiss, which was denied. The trial court found Burke guilty as charged and later sentenced him to eight years with two years suspended.

Burke now appeals.

## Discussion and Decision

Burke contends that Indiana Code section 35–43–2–1(1)(B)(ii), which enhances burglary from a Class C felony to a Class B felony if the building or structure burgled is a structure used for religious worship, violates the Establishment Clause of the First Amendment to the United States Constitution and Article 1, Section 4 of the Indiana Constitution.

### I. Federal Constitution

Burke contends that Section 35–43–2–1(1)(B)(ii) violates the Establishment Clause of the First Amendment to the United States Constitution.

As an initial matter, the State argues that Burke has waived any federal constitutional argument because his motion to dismiss challenged the statute under only the Indiana Constitution. Our Supreme Court has noted that, generally, a challenge to the constitutionality of a criminal statute must be raised in a motion to dismiss before trial or the claim is waived. *Payne v. State*, 484 N.E.2d 16, 18 (Ind.1985).

Nonetheless, both our Supreme Court and this Court have considered challenges to the constitutionality of criminal statutes even when defendants have failed to file motions to dismiss. *See, e.g., Morse v. State*, 593 N.E.2d 194, 197 (Ind.1992) (stating that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court" and therefore addressing

constitutional challenge to statute raised for first time in defendant's *pro se* motion filed on appeal even though defendant's counsel did not raise issue in appellate brief), *reh'g denied; Payne*, 484 N.E.2d at 18 (acknowledging doctrine of waiver but considering unpreserved constitutional challenge where State did not raise waiver issue); *Price v. State,* 911 N.E.2d 716, 719 (Ind.Ct.App.2009) (addressing constitutional challenge to criminal statute even though defendant failed to file motion to dismiss and State argued waiver), *trans. denied; Vaughn v. State,* 782 N.E.2d 417, 420 (Ind.Ct.App.2003) (same), *trans. denied.*

We recognize that Burke's motion to dismiss challenged Section 35–43–2–1(1)(B)(ii) under only the Indiana Constitution. However, in line with the foregoing cases, we choose to address the merits of Burke's federal constitutional claim.

■■■ Statutes are presumed to be constitutional, and such presumption continues until clearly overcome by a showing to the contrary. *Myers v. State,* 714 N.E.2d 276, 280 (Ind.Ct.App.1999), *trans. denied.* We resolve all doubts in favor of a statute's constitutionality. *Id.* The burden is on the party challenging a statute to demonstrate its unconstitutionality. *Id.*

Indiana's burglary statute provides in relevant part:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is:

(1) a Class B felony if:

\* \* \* \* \* \*

(B) the building or structure is a:

\* \* \* \* \* \*

(ii) structure used for religious worship. . . .

I.C. § 35–43–2–1.

The First Amendment's Establishment Clause, made applicable to the States through the Fourteenth Amendment's Due Process Clause, provides, "Congress shall make no law respecting an establishment of religion. . . ." U.S. Const. amend. I; *see Myers,* 714 N.E.2d at 280. The United States Supreme Court has summarized the Establishment Clause in this way:

The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between [c]hurch and State."

*Everson v. Bd. of Educ. of Ewing Twp.,* 330 U.S. 1, 15–16, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (quoting *Reynolds v. United States,* 98 U.S. 145, 164, 25 L.Ed. 244 (1878)).

■■■ To determine whether government action offends the Establishment Clause,

we have applied the United States Supreme Court's three-part test articulated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See, e.g., Johnson v. State,* 659 N.E.2d 194, 199 (Ind.Ct.App.1995), *reh'g denied.* Under *Lemon,* a statute does not violate the Establishment Clause if: (1) it has a secular legislative purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion. 403 U.S. at 612–13, 91 S.Ct. 2105. Because the United States Supreme Court has "repeatedly emphasized [its] unwillingness to be confined to any single test or criterion in this sensitive area," *Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), we apply the *Lemon* analysis here with full recognition that it provides "no more than helpful signposts." *Hunt v. McNair,* 413 U.S. 734, 741, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973).[1]

We have been unable to find any Indiana case in which a defendant argued that Section 35–43–2–1(1)(B)(ii), or any other statutory provision enhancing a crime when a structure used for religious worship is involved, violates the Establishment Clause. Burke's claim thus presents an issue of first impression.

A similar challenge, however, was raised in Illinois. In *People v. Carter (Carter I),* 228 Ill.App.3d 526, 170 Ill.Dec. 55, 592 N.E.2d 491, 495 (Ill.App.Ct.1992), the defendant argued that a state sentencing provision that allowed a trial court to consider as an aggravating factor the fact that a crime occurred in or on the grounds of a place of worship immediately before, during, or after worship services violates the Establishment Clause. The Appellate Court of Illinois disagreed. The court concluded that the provision has a secular legislative purpose by observing its legislative history, which indicated that its purpose is to protect places of worship and the people who use them to the same extent as police officers, teachers, and nurses. *Id.,* 170 Ill.Dec. 55, 592 N.E.2d at 497. After noting that "[p]laces of worship reach out and extend an invitation to the public; doors are unlocked; security is relaxed," the court found that the provision reflects the legislature's determination that "crimes committed in such places, like crimes committed against the aged, are more repugnant to the community than, for example, crimes committed against convenience stores and those who use them." *Id.* Moving on to *Lemon's* second prong, the court noted that the primary effect of the provision "falls on criminals rather than on their victims." *Id.,* 170 Ill.Dec. 55, 592 N.E.2d at 498. Although acknowledging that the provision confers a benefit to people owning and using places of worship, the court found that benefit "too indirect" to violate the Establishment Clause. *Id.* Finally, the court found that the defendant had not demonstrated that the provision fosters an excessive government entanglement with religion. *Id.*

The Seventh Circuit heard the case in *Carter v. Peters (Carter II),* 26 F.3d 697 (7th Cir.1994), after the Illinois Supreme

---

1. We acknowledge, as does the State, Appellee's Br. p. 5 n. 3, that the United States Supreme Court has not always applied the *Lemon* analysis to Establishment Clause cases. *See, e.g., Van Orden v. Perry,* 545 U.S. 677, 686, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) ("Whatever may be the fate of the *Lemon* test in the larger scheme of Establish-

ment Clause jurisprudence, we think it not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds."). Both the State and Burke, however, cite *Lemon* as the analysis applicable to Burke's Establishment Clause claim, and we find it useful in the context presented here.

Court denied the defendant's appeal and the Northern District of Illinois denied his habeas petition. The Seventh Circuit found the provision's secular purpose "plain." *Id.* at 698. Viewing the statute as a whole, the court found that it affords special protection to certain classes of people who need additional protection. *Id.* Other provisions of the statute allow courts to consider, for example, whether the victim was sixty years of age or older, whether the victim was handicapped, or whether the accused was motivated by the victim's race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin. *Id.* The court stated that the legislature need not "close its eyes to the traditional absence of security measures surrounding worship services, which renders those attending such services more vulnerable to criminal activity." *Id.* at 699. The court also found that the provision's primary effect neither advances nor inhibits religion. Much like the Appellate Court of Illinois, the Seventh Circuit found that the provision's primary effect was not on people deciding whether to attend worship services, but on people who commit crimes there. *Id.* And although the provision gives people attending worship services additional protection, "[s]uch incidental, indirect benefits to religion do not offend the second prong of the *Lemon* test." *Id.* After concluding that the provision does not foster excessive government entanglement with religion, which the defendant did not contest, the Seventh Circuit affirmed the denial of the defendant's habeas petition. *Id.*

Comparable Establishment Clause challenges in other jurisdictions have reached the same conclusion. *See, e.g., United States v. Corum,* 362 F.3d 489, 495–97 (8th Cir.2004) (challenging federal Church Arson Prevention Act); *Rice v. State,* 754 So.2d 881, 883–84 (Fla.Dist.Ct.App.2000) (challenging state statute enhancing sentences for drug offenses committed within 1000 feet of a place of worship); *Todd v. State,* 643 So.2d 625, 627–30 (Fla.Dist.Ct. App.1994) (challenging state statute making it a felony to deface a place of worship); *People v. Falbe,* 189 Ill.2d 635, 244 Ill.Dec. 901, 727 N.E.2d 200, 206–09 (2000) (challenging state statute enhancing sentences for drug offenses committed within 1000 feet of a place of worship); *Dimaio v. State,* 951 So.2d 581, 587–88 (Miss.Ct.App. 2006) (challenging state statutes enhancing sentences for burglary or petit larceny committed in a place of worship); *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112, 113–14 (N.M.Ct.App.1976) (challenging state statute criminalizing desecration of a church); *Maxwell v. State,* 141 P.3d 564, 567–69 (Okla.Crim.App.2006) (challenging state statute criminalizing maintaining a house of prostitution within 1000 feet of a church).

■ We agree with these other courts. Section 35–43–2–1(1)(B)(ii)'s purpose is not to give added protection to structures used for religious worship but to ensure the appropriate sentence for the offender. It reflects a legislative recognition that: (1) structures used for religious worship have a "traditional absence of security measures" and are thus easy targets of crime, *Carter II,* 26 F.3d at 699, (2) crimes against structures used for religious worship are "more repugnant to the community," *Carter I,* 170 Ill.Dec. 55, 592 N.E.2d at 497, and (3) it takes more time to reform and rehabilitate those offenders who commit acts society deems more repulsive. Further, Section 35–43–2–1(1)(B)(ii)'s primary effect is on the offender, and whatever benefits the provision may have on structures used for religious worship are only "incidental" and "indirect." *Carter II,* 26 F.3d at 699. Finally, Section 35–43–2–1(1)(B)(ii) does not foster an excessive

government entanglement with religion. Burke claims that the provision fosters excessive entanglement because it requires "the government, via the fact finder, . . . to say whether a religion and its practices constitute 'religious worship.' " Appellant's Br. p. 12. We disagree. Excessive entanglement involves "[a] comprehensive, discriminating, and continuing state surveillance." *Lemon,* 403 U.S. at 619, 91 S.Ct. 2105. We do not believe that determining whether a structure is one used for "religious worship" constitutes the type of entanglement prohibited by the Establishment Clause. *See Todd,* 643 So.2d at 630 (concluding that a determination of whether defaced property is a place of worship or a religious article therein does not constitute excessive governmental entanglement with religion).[2]

Today we join other courts that have considered comparable challenges and conclude that Section 35–43–2–1(1)(B)(ii) does not violate the Establishment Clause.

## II. Indiana Constitution

■ Burke also contends that Section 35–43–2–1(1)(B)(ii) violates Article 1, Section 4 of the Indiana Constitution.

Article 1, Section 4 provides, "No preference shall be given, by law, to any creed, religious society, or mode of worship; and no person shall be compelled to attend, erect, or support, any place of worship, or to maintain any ministry, against his consent."

■ Burke asks us to hold that the proper analysis for reviewing an Article 1, Section 4 claim is the same as that used to analyze an Establishment Clause claim under the federal constitution. The State asserts that our Supreme Court has already established the proper analysis in *City Chapel Evangelical Free Inc. v. City of South Bend ex rel. Department of Redevelopment,* 744 N.E.2d 443 (Ind.2001). Burke responds that the State's reliance on *City Chapel* is misplaced because *City Chapel* "deal[t] with the free exercise of religion as opposed to the establishment of religion. As free exercise and establishment are very different concerns, the test used for one is not the appropriate test for the other." Appellant's Reply Br. p. 1.

■ In *City Chapel,* a trial court overruled City Chapel's objections that South Bend's condemnation proceeding violated its rights under the religion clauses of the

---

2. In support of his entanglement argument, Burke quotes the following language from a United States Supreme Court opinion:

> The determination of what is a "religious" belief or practice is more often than not a difficult and delicate task. . . . However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question. . . .

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (footnote omitted). *Thomas* was a First Amendment Free Exercise Clause case involving a person in Indiana who quit his job after he was transferred to a department that produced turrets for military tanks. *Id.* at 709, 101 S.Ct. 1425. Although he claimed his religious beliefs as a Jehovah's Witness prevented him from participating in the production of war materials, he

was denied unemployment compensation benefits. *Id.* The Supreme Court found the record clear that the person quit his job for religious reasons and held that the denial of unemployment compensation benefits violated the Free Exercise Clause. *Id.* at 716, 101 S.Ct. 1425.

Burke's reliance on *Thomas* is unavailing. First, because *Thomas* dealt with the Free Exercise Clause and not the Establishment Clause, it did not involve the excessive entanglement prong of *Lemon.* Second, although the Court found the determination of what constitutes a religious belief a complicated question, it nevertheless concluded that the Review Board had made an appropriate finding that the person quit his job because of an honest conviction that such work was forbidden by his religion. *See id.*

Indiana Constitution. 744 N.E.2d at 444. On appeal, City Chapel asserted that South Bend gave preference to a religious society or mode of worship in violation of Article 1, Section 4 by pursuing the condemnation action against City Chapel but allowing another church located in a redevelopment district to remain. *Id.* at 445. It also asserted claims under the religion clauses in Sections 2 and 3 of Article 1. *Id.* South Bend argued that the Indiana Constitution's guarantees of religious protection should be equated with that provided in the First Amendment. *Id.* Our Supreme Court disagreed:

> When Indiana's present constitution was adopted in 1851, the framers who drafted it and the voters who ratified it did not copy or paraphrase the 1791 language of the federal First Amendment. Instead, they adopted seven separate and specific provisions, Sections 2 through 8 of Article 1, relating to religion. Clearly, the religious liberty provisions of the Indiana Constitution were not intended merely to mirror the federal First Amendment. We reject the contention that the Indiana Constitution's guarantees of religious protection should be equated with those of its federal counterpart and that federal jurisprudence therefore governs the interpretation of our state guarantees.

*Id.* at 445–46. Instead, the Court observed that we have used a different standard when analyzing claims under Article 1 of the Indiana Constitution: " '[T]here is within each provision of our Bill of Rights a cluster of essential values which the legislature may qualify but not alienate. A right is impermissibly alienated when the State materially burdens one of the core values which it embodies.' " *Id.* at 446 (quoting *Price v. State,* 622 N.E.2d 954, 960 (Ind.1993), *reh'g denied* ). As to the core value of Section 4, the Court determined that because little could be gleaned

from the constitutional convention debates to amplify our understanding of its language, the text itself is "our primary source for discerning the common understanding of the framers and ratifiers." *Id.* at 448. After concluding that City Chapel was entitled to present its claims to the trial court under the religion clauses of the Indiana Constitution, the Court stated:

> City Chapel must establish its contention that the taking of its church building by condemnation, under the circumstances presented in this case, materially burdens its members' right to worship according to the dictates of conscience, the right freely to exercise religious opinions and rights of conscience, or *the right to be free from a government preference for a particular religious society or mode of worship.*

*Id.* at 451 (emphasis added).

Our Supreme Court thus clearly determined that the material burden analysis applies to challenges under Article 1, Section 4. In light of this precedent, we do the same.

 We must determine whether Section 35–43–2–1(1)(B)(ii) materially burdens the right to be free from government preference for a particular religion or religion in general. The provision will amount to a material burden upon a core constitutional value "[i]f the right, as impaired, would no longer serve the purpose for which it was designed." *Price,* 622 N.E.2d at 960 n. 7 (applying material burden analysis to determine whether disorderly conduct statute infringed upon Indiana Constitution's protection for freedom of expression). The material burden analysis looks only to the magnitude of the impairment and does not take into account the social utility of the state action at issue. *City Chapel,* 744 N.E.2d at 447.

By classifying burglary of a structure used for religious worship as a Class B felony, Section 35–43–2–1(1)(B)(ii) does not demonstrate a preference for a particular religion or religion in general. To the extent that the provision may benefit structures used for religious worship in the form of added protection, such benefit is too slight to frustrate Article 1, Section 4's core constitutional value. That is, such benefit does not amount to an impairment of such magnitude that the right to be free from government preference for a particular religion or religion in general is unconstitutionally burdened.

We conclude that Section 35–43–2–1(1)(B)(ii) does not violate Article 1, Section 4 of the Indiana Constitution. We therefore affirm the trial court.

Affirmed.

BAKER, J., and BARNES, J., concur.