

FILED

Feb 14 2019, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Vega,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 14, 2019<br><br>Court of Appeals Case No.<br>18A-CR-942<br><br>Appeal from the Madison Circuit<br>Court<br><br>The Honorable David A. Happe,<br>Judge<br><br>Trial Court Cause No.<br>48C04-1704-F3-1072 |

**Najam, Judge.**

## Statement of the Case

Daniel Vega appeals his convictions for one count of child molesting, as a Level 3 felony, and two counts of child solicitation, as Level 5 felonies, following a

jury trial.  Vega also appeals his fifteen-year sentence.  Vega raises six issues for our review, which we restate as follows:

1.    Whether the trial court abused its discretion when it admitted into evidence a video-recorded forensic interview of the child victim.

2.    Whether the trial court abused its discretion when it denied Vega's request to have an expert psychologist examine the child victim at public expense.

3.    Whether Vega preserved for appellate review his argument that the trial court erroneously permitted the State to present inadmissible drumbeat evidence to the jury.

4.    Whether Vega preserved for appellate review his argument that the trial court erred when it denied his request for a mistrial.

5.    Whether the trial court abused its discretion when it sentenced Vega.

6.    Whether Vega's sentence is inappropriate in light of the nature of the offenses and his character.

[2]    We affirm.

## Facts and Procedural History

[3]    In early 2017, Vega, who was eighteen years old at the time, was living with his uncle, M.S.; M.S.'s then-ten-year-old daughter, E.S.; and M.S.'s wife and stepson in Alexandria.  M.S. had helped Vega obtain employment at American

Woodwork, where M.S. also worked, and M.S. and Vega would ride to work together.  E.S. had her own room at the family residence.  Vega slept on a couch in the living room.

[4] During the evening of April 20, Vega entered E.S.'s bedroom, woke her, and told her he would "give [her] twenty dollars if you suck my thing."  Tr. Vol. III at 183.  E.S. told him that she was "gonna tell [her] dad," and Vega "ran outside."  *Id.*  The next day, E.S. spoke of the incident with Holly Eiler, a social worker at E.S.'s school.  Eiler contacted the Indiana Department of Child Services ("DCS"), and DCS case workers arranged for E.S. to have a forensic interview at the Child Advocacy Center later that day.

[5] Kelsey Green conducted E.S.'s forensic interview, which was video-recorded.  Green has a degree in psychology and has conducted about 2,000 forensic interviews.  During her interview, E.S. detailed the prior night's incident with Vega.  E.S. also said that, on another occasion, Vega had tried to make E.S. "touch his thing" by "pull[ing] down his pants and . . . tr[ying] to put [her] hand down there . . . ."  *Id.* at 189-90.  Then E.S. told Green that, on a different occasion, Vega had "forced [her] to suck his thing."  *Id.* at 193.  Vega had "grabbed [E.S.]" and "ma[de her] put it in [her] mouth" until "[w]hite stuff" came out, which made E.S. "throw[ ]up."  *Id.* at 193-94.  E.S. told Green that she did not "feel safe around" Vega.  *Id.* at 193.

[6] Following E.S.'s forensic interview, Alexandria Police Officer Joe Heath interviewed Vega.  When Officer Heath informed Vega of E.S.'s allegations and

asked Vega if he "kn[ew] anything about" them, Vega responded, "She's nasty. . . . [I]f I were to get [sic] in any kind of sexual way I would have someone more attractive . . . ." Tr. Vol. IV at 57. Officer Heath then asked Vega why E.S. would say what she did, and Vega responded: "I don't know. That's from her part. She knows how to suck dick. Go for it." *Id.* at 67.

[7] After E.S. opened up about her experiences with Vega, M.S. observed that E.S. began to act differently. In particular, he observed that she was "scared to sleep by herself" in her room. Tr. Vol. III at 157. M.S. also observed that E.S. would "urinate[]" her bed because "she doesn't want to get up [be]cause she's scared" that Vega is "watching her through the window." Tr. Vol. III at 157.

[8] The State charged Vega with one count of child molesting, as a Level 3 felony, and four counts of child solicitation, as Level 5 felonies. On January 29, 2018, the State moved under Indiana's Protected Person Statute to have E.S.'s forensic interview with Green admitted in lieu of E.S. testifying in person at trial. *See* Ind. Code § 35-37-4-6 (2018). The court held a hearing on the State's request in February, at which Vega appeared with counsel and E.S. appeared by closed-circuit television.

[9] Miyah Grant testified in support of the State's motion. Grant is a doctoral student in the clinical psychology program at the University of Indianapolis, and, under the supervision of Dr. Sharon McNeany, a licensed psychologist, Grant is E.S.'s counselor. Grant testified that E.S. frequently has anxiety about testifying in court such that she "begins crying uncontrollably and shaking,"

and it is a "struggle to communicate" with her. Tr. Vol. II at 71. Grant also related continuing fear E.S. has of Vega, saying that, on the day of the protected-person hearing, E.S. asked that the room of the closed-circuit television have "lock[ed] . . . doors." *Id.* at 72. Grant opined that being in the physical presence of Vega at trial could cause E.S. such distress that she would not "be able to reasonably communicate." *Id.* at 74. Dr. McNeany testified that, based on her supervision and review of Grant's work, she agreed with Grant's assessment that E.S. would be unable to reasonably communicate at Vega's trial.

[10] E.S. testified at the February hearing by way of recorded, closed-circuit television, and Vega subjected her to cross-examination through his counsel. Eiler and other school officials testified that E.S. continues to have extreme emotional reactions to her experiences with Vega, which make communication with E.S. difficult. They also testified that E.S. has expressed suicidal ideations.

[11] At the conclusion of the February hearing, Vega moved to have the court order E.S. to receive a mental health evaluation "by an independent, neutral party" at public expense. *Id.* at 131. The trial court denied Vega's request. However, the court granted the State's request to have E.S.'s forensic interview with Green admitted at trial in lieu of E.S. testifying in person.

[12] Thereafter, the State dismissed two of the Level 5 felony counts. At Vega's ensuing jury trial, he renewed his objections to the use of E.S.'s forensic interview with Green but only "based on confrontation" grounds. Tr. Vol. III

at 175. The trial court overruled Vega's objection. Later in the trial, the State also sought to have E.S.'s recorded testimony at the protected-person hearing admitted into the record. Again, Vega objected only on confrontation grounds, which the trial court overruled. The jury found Vega guilty as charged.

[13] On March 20, the court held Vega's sentencing hearing. At the conclusion of that hearing, the court found as follows:

> I do find that there is both aggravation and mitigation present on the record. The fact that there are multiple counts here of which the defendant was convicted, that's an aggravating factor. I think that clearly the defendant abused the position of trust. He was part of this family, was allowed to be in an intimate sleeping arrangement with the family and trusted to be around the young children in that family and took advantage of that to victimize the child the way that he did. I think that . . . it's not significant but there is some history of criminal conduct shown in that the defendant has drug usage extending back to age thirteen. And the court's going to find an aggravating factor here to be that the defendant went out of his way in the statement he gave to police . . . to denigrate and insult the victim and that exacerbated the psychological harm that both the victim and her family suffered. You can come in and just maintain your innocence. You can come in and maintain your silence. But . . . the defendant in this case chose not to do that. He . . . chose to come in and insult the victim and demean her . . . . That was something he didn't have to do and that's something that made it worse and more hurtful to go through . . . . In terms of mitigation I do find that there is some here. The defendant is a person of young age. He has largely a lack of significant prior criminal history, apart from the . . . drug usage that I mentioned. And I'm go[ing] to find it to be a mitigating factor that the defendant did suffer neglect and abuse at the hand of the adults in his life when he was [a] child. On balance, however, I do find

> that the aggravation outweighs the mitigation here and a
> significant punitive sanction is appropriate.

Tr. Vol. IV at 189-90. The court then sentenced Vega to an aggregate term of fifteen years, with three years suspended to probation. This appeal ensued.

# Discussion and Decision

### Issue One: Admission of E.S.'s Forensic Interview

[14] On appeal, Vega first asserts that the trial court abused its discretion when it admitted E.S.'s video-recorded forensic interview at trial. As decisions to admit or exclude evidence fall within the trial court's sound discretion, we afford those decisions deference and review them for an abuse of discretion. *Wright v. State*, 108 N.E.3d 307, 313 (Ind. 2018). We will reverse a trial court's decision to admit evidence only if the decision was clearly against the logic and effect of the facts and circumstances and the error affects the defendant's substantial rights. *Id.* (quotation marks and alteration omitted).

[15] Vega asserts that the trial court erred when it admitted E.S.'s forensic interview because, at the February protected-person hearing, the State did not present sufficient evidence to demonstrate that E.S. would be unavailable to testify in person at trial. Indiana Code Section 35-37-4-6(e)(2)(B) states that, for a protected person[1] to be found unavailable as a trial witness, the court must, as

---

[1] Vega does not dispute that E.S. is a protected person under the statute. Insofar as Vega attempted to argue on appeal that the trial court erred under Indiana Code Section 35-37-4-6(e)(1) on the ground that the time, content, and circumstances of E.S.'s recorded statement fail to provide sufficient indications of reliability, we

relevant here, determine "[f]rom the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any," that "the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate." According to Vega, Grant's testimony is insufficient because she is not a licensed psychologist, and Dr. McNeany's testimony is insufficient because she did not personally interview E.S.

[16] We reject Vega's contention. Medical professionals, like professionals in many areas, utilize subordinates, and when a medical professional signs off on a subordinate's work product, it becomes the medical professional's work product. Here, a licensed psychologist adopted and ratified the work of her subordinate and made it her own.

[17] In particular, Grant is a doctoral student in the clinical psychology program at the University of Indianapolis under the supervision of Dr. McNeany, who is a licensed psychologist. Grant's status enabled Dr. McNeany to consider whether E.S. would suffer serious emotional distress at trial such that E.S. would be unable to reasonably communicate, and Dr. McNeany's status and standing as Grant's supervisor allowed her to adopt, reject, or modify Grant's opinion as Dr. McNeany deemed appropriate. And that is what happened here: Grant concluded that E.S. would suffer serious emotional distress at trial

conclude that Vega has failed to support any such argument with cogent reasoning, and we do not consider it. Ind. Appellate Rule 46(A)(8)(a).

such that E.S. would be unable to reasonably communicate. Dr. McNeany reviewed and then agreed with Grant's recommendation.

[18] In other words, the State's evidence shows that a licensed psychologist reviewed and then adopted the work of her subordinate, testified, and gave her opinion at the protected-person hearing as to E.S.'s unavailability at trial. This is not a case where only the subordinate testified, or where the licensed professional had not personally reviewed and approved the subordinate's work. We hold that the State presented sufficient evidence under the statute to demonstrate E.S.'s unavailability at trial, and the trial court acted within its discretion when it admitted E.S.'s recorded forensic interview due to her unavailability.

### Issue Two: Denial of Mental-Health Expert at Public Expense

[19] Vega next asserts that the trial court abused its discretion when it denied his request for an additional mental-health expert to evaluate E.S. at public expense. As we have explained:

> The appointment of experts for indigent defendants is left to the trial court's sound discretion. It is within the court's discretion to determine whether the requested service would be needless, wasteful[,] or extravagant. The trial court is not required to appoint at public expense any expert that the defendant might find helpful. The defendant requesting the appointment of an expert bears the burden of demonstrating the need for the appointment.

*McConniel v. State*, 974 N.E.2d 543, 557 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

[20]    We cannot say that the trial court abused its discretion when it denied Vega's request. At the time of the February hearing, when Vega made his request, E.S. had an ongoing relationship with Grant, and Dr. McNeany reviewed and supervised Grant's work. Vega did not meet his burden to demonstrate the need to have E.S. submit to yet another mental-health evaluation, with that evaluation being at public expense. Accordingly, we affirm the trial court on this issue.

### Issue Three: "Drumbeat Evidence"

[21]    Vega asserts that the trial court abused its discretion when it admitted both E.S.'s recorded forensic interview and also E.S.'s recorded testimony at the February hearing. According to Vega, the two recordings amounted to inadmissible "drumbeat evidence." However, in the trial court, Vega objected to the two exhibits only on the ground that they allegedly violated his federal and state rights to confront witnesses.[2] Tr. Vol. III at 175; Tr. Vol. IV at 86. It is well settled that a party may not raise one ground for objection in the trial court and argue a different ground on appeal. *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998). We conclude that Vega has not preserved his "drumbeat evidence" argument for appellate review.

---

[2] Vega separately objected at trial to specific portions of the testimony of Grant and Eiler as cumulative to E.S.'s admitted statements. However, insofar as Vega attempted to argue on appeal that the trial court abused its discretion when it overruled those objections, Vega's argument is not supported by cogent reasoning, and we do not consider it. App. R. 46(A)(8)(a).

### *Issue Four:  Denial of Vega's Motion for a Mistrial*

[22]    Vega asserts that the trial court abused its discretion when it denied his motion for a mistrial.  As we have explained:

> A mistrial is an extreme remedy granted only when no other method can rectify the situation.  A trial court's decision not to grant a mistrial is reviewed for an abuse of discretion.  Moreover, a reviewing court accords great deference to the trial court's ruling on a mistrial motion.  In determining whether a mistrial was warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected.  The gravity of the peril is determined by the probable persuasive effect on the jury's decision.  When a motion for mistrial has been denied, the defendant has the burden to demonstrate both that he was placed in a position of grave peril to which he should not have been subjected and that no other remedy can cure the perilous situation in which he was placed.

*Brooks v. State*, 934 N.E.2d 1234, 1243 (Ind. Ct. App. 2010) (citations and quotation marks omitted), *trans. denied*.

[23]    According to Vega's argument to the trial court in support of a mistrial, the State failed to inform Vega that it had interviewed two of E.S.'s other cousins, one of whom E.S. had identified in her forensic interview with Green as a possible witness, and further that the State had failed to inform Vega that neither of the two cousins had reported observing inculpatory behavior by Vega.  According to Vega, the State's disclosure at trial of this information placed him in a position of grave peril.  The trial court denied Vega's motion as to the cousin identified by E.S. on the ground that Vega had been put on notice

by E.S.'s statements that that cousin might be a witness. The court denied Vega's motion as to the other cousin because "[t]he State's theory is not th[at the] child was constantly twenty-four/seven molested . . . . So the fact that someone was around the parties and didn't see a molest happening, I'm not sure that's even relevant." Tr. Vol. III at 128.

[24] We initially note that Vega's argument on appeal is that he was unduly prejudiced by the State's untimely disclosure of potential discovery. Under that theory, Vega should have moved for a continuance in the trial court. *See Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). He did not. Accordingly, he has not preserved this alleged error for our review. *Id.* Vega's waiver notwithstanding, as explained by the trial court Vega had the opportunity to depose the cousin identified by E.S. in her forensic interview well before trial. And Vega has failed to show that the probative value and probable persuasive effect on the jury of testimony that Vega had behaved in E.S.'s presence would have been significant. Thus, we reject Vega's arguments on this issue.

### Issue Five: Abuse of Discretion in Sentencing

[25] We next turn to the first of Vega's two arguments with respect to his sentence. In particular, Vega asserts that the trial court abused its discretion when it sentenced him because it relied on an aggravating circumstance not supported by the record. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[26] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (2007)).

[27] Vega asserts that the trial court's finding that E.S. and her family suffered additional emotional or mental harm from Vega's callous statements to police is not supported by the record. According to Vega, "there was no evidence that either the girl or her family heard or read his police interview." Appellant's Br. at 32. More compellingly, Vega adds that "[t]here is no evidence that [E.S.'s] emotional problems . . . were increased by [Vega's] comments in the police interview." *Id.*

[28] We are obliged to agree with Vega. Nothing in the record on appeal demonstrates that E.S. or her family had any knowledge of Vega's statements to police, let alone that their emotional suffering increased upon learning of those statements. We understand the State's argument on appeal that E.S. or her

family may have been present at the trial, but our review must be based on the record, and the record does not reflect a factual basis for the trial court's finding of this aggravator. Accordingly, we agree with Vega that the trial court erred when it cited an aggravator not found in the record.

[29] Nonetheless, where the trial court abuses its discretion in sentencing a defendant, we need not remand for resentencing if we can "say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. We can say with confidence that the trial court would have imposed the same sentence here. Vega's argument on appeal that the trial court erred when it considered the harm to E.S. and her family of his statements to the police is technically correct, but the record is clear that on other occasions Vega did denigrate E.S. in person, which increased her emotional or mental anguish. For example, E.S. stated in her interview with Green that Vega "usually calls [her] [a] fat pig," "flips [her] off," and "calls [her] a lot of bad words." Tr. Vol. III at 199. E.S. specifically cited those examples as part of the reason she continues to feel "[n]ot safe . . . [w]hen [Vega is] there" at her home. *Id.*

[30] In other words, the gravamen of the trial court's aggravator is that Vega disparaged his victim, E.S., which caused her additional anguish. And Vega's statements to E.S. in person, which are supported in the record, are the equivalent of Vega's statements to the police, which the trial court relied on. Accordingly, we need not remand to require the trial court to simply recite its rationale while adding facts that are properly supported by the record. Thus,

we can say with confidence that the trial court would, on remand, impose the same sentence based on other reasons that enjoy support in the record and that a remand for resentencing is unnecessary.

### Issue Six: Inappropriateness of Sentence

Finally, Vega asserts on appeal that his fifteen-year sentence, with three years suspended to probation, is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should

receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[33] Indiana Code Section 35-50-2-5(b) states that a person convicted of a Level 3 felony shall be imprisoned for a fixed term between three and sixteen years, with an advisory sentence of nine years. Indiana Code Section 35-50-2-6(b) states that a person convicted of a Level 5 felony shall be imprisoned for a fixed term between two and eight years, with an advisory sentence of four years. For his one Level 3 felony conviction and two Level 5 felony convictions, Vega received an aggregate term of fifteen years, with three years suspended to probation, which is well below the maximum possible aggregate sentence Vega faced. Nonetheless, in support of his argument on appeal, Vega asserts that he is not the worst of the worst offenders; that his criminal history is not serious; that he did not physically harm E.S. or threaten her with physical harm; and

that nothing about the facts and circumstances of his offenses go beyond the statutory elements of those offenses.

[34] We cannot say that Vega's sentence is inappropriate in light of the nature of the offenses or his character. Regarding the nature of the offenses, Vega solicited his ten-year-old cousin for oral sex on multiple occasions. When she declined on one occasion, he forced her to perform oral sex on him to the point of ejaculation, which caused E.S. to vomit. He also attempted to force her to touch his penis with her hand on another occasion. With respect to Vega's character, he has a long history of marijuana use despite his young age, he abused a position of trust over E.S., and he abused the generosity of her family in finding him employment and a place to live. Accordingly, we cannot say that his aggregate sentence of fifteen years, with three years suspended to probation, is inappropriate in light of the nature of the offenses and his character.

## Conclusion

[35] In sum, we affirm Vega's convictions and sentence.

[36] Affirmed.

Pyle, J., and Altice, J., concur.