FILED

Aug 24 2020, 9:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Mehringer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 24, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2281<br><br>Appeal from the Johnson Circuit Court<br><br>The Honorable Andrew Roesener, Judge<br><br>Trial Court Cause No.<br>41C01-1808-F3-38 |

**May, Judge.**

[1] Michael Mehringer appeals his conviction of and sentence for Level 3 felony child molesting.[1] He presents five issues for our review, which we revise and restate as:

> 1. Whether the State presented sufficient evidence to support Mehringer's conviction;
>
> 2. Whether the trial court abused its discretion by omitting proposed mitigating circumstances from its sentencing statement;
>
> 3. Whether Mehringer's sentence is inappropriate in light of the nature of his offense and his character;
>
> 4. Whether Indiana Code section 35-38-1-7.5 unconstitutionally encroaches on the judicial fact-finding function; and
>
> 5. Whether Mehringer's right to due process was violated when he was determined to be a sexually violent predator by operation of law pursuant to Indiana Code section 35-38-1-7.5.

We affirm.

# Facts and Procedural History

[2] After dating since 2006, Mehringer married a woman named Andrea, who had a daughter from a previous relationship. Mehringer acted as a father figure toward Andrea's daughter and legally adopted her in 2012, making her name

---

[1] Ind. Code § 35-42-4-3.

G.M. Mehringer would help G.M. with her homework, attend her sporting events, go on family vacations, and perform other parenting functions.

[3] While on winter break from school in December 2017, G.M., who was approximately thirteen years old, attended twice-daily swim practices. Mehringer would sometimes give G.M. massages to alleviate her soreness from practice. That December, Mehringer had several days off from his job working for the Federal Aviation Administration ("FAA"). The night before he was to return to work, Mehringer visited G.M.'s bedroom and laid down next to her on her bed. G.M. played games on Mehringer's cell phone, and then she decided to read a book. G.M. reached over Mehringer to grab the book from the nightstand and then laid back down.

[4] G.M. was wearing panties and a long t-shirt, and as she was reading, Mehringer "started to touch [G.M.'s] legs and then eventually went through [her] underwear." (Tr. Vol. I at 71.) Mehringer inserted his finger into G.M.'s vagina and stated, "if I massage you too hard let me know." (*Id.* at 72.) G.M. froze while Mehringer touched her, and she eventually asked to use the restroom. After using the restroom, G.M. returned to the bedroom and said that she was going to bed. Mehringer got off G.M.'s bed, and G.M. laid down on the edge of her bed. Mehringer then tried to lay down next to G.M., but he fell off her bed. Mehringer asked G.M. if she wanted him to continue lying next to her, and she indicated that she did not. Mehringer then promised G.M. an iPod, a car on her 16th birthday, and "the best 21st birthday." (*Id.* at 73.)

[5] G.M. mentioned Andrea would be very upset if she found out what Mehringer had done to her, and Mehringer told G.M. not to tell her mom about what happened because Andrea would kick him out of the house if she found out. Mehringer then asked, "what about the other times this happened[?]," alluding to a time when he rubbed against G.M. while they were both lying on her bed and a time when G.M. was sitting in the living room and Mehringer touched her breast. (*Id.* at 76.) Mehringer then left G.M.'s bedroom. G.M. cried and had trouble falling asleep that night. She decided not to go to swim practice the next morning because she was too tired.

[6] While Andrea drove G.M. to her evening swim practice the day after the incident, G.M. told Andrea that Mehringer "needs to tell you something when he gets home." (*Id.* at 66.) Andrea called Mehringer after dropping G.M. off, and she asked Mehringer what happened the previous night. Mehringer said, "'I'm not sure. I know I did something wrong. I think I touched G.M.'" (*Id.* at 28.) The three discussed the matter when G.M. returned home from swim practice. Andrea did not immediately contact the police or the Department of Child Services ("DCS"). Mehringer moved out of the house in January 2018. In April or May of 2018, G.M. started to attend counseling. Around this time, Andrea also contacted DCS and filed for divorce from Mehringer. DCS contacted the Greenwood Police Department, and a detective interviewed G.M.

[7] The State charged Mehringer with Level 3 felony child molesting on August 2, 2018. The court held a bench trial on August 26, 2019. At trial, Mehringer

acknowledged lying next to G.M. on her bed and giving her a massage, but he denied inserting his finger in her vagina. He testified that when he told G.M. she was not going to get an iPod for Christmas as punishment for sending lewd photographs to a teenage boy, G.M. accused him of touching her inappropriately. The trial court found Mehringer guilty and entered judgment of conviction.

[8] The court held a sentencing hearing on September 16, 2019. At the conclusion of the hearing, Mehringer asked for a lenient sentence. He noted his lack of criminal history, the good parenting behaviors he exhibited in raising G.M., his inability to continue making child support payments while incarcerated, and his low likelihood of recidivism. The State pointed out that Mehringer exploited a position of trust to commit his crime and asked the court to sentence Mehringer to an eleven-year term, with eight years executed followed by three years on probation.

[9] In pronouncing sentence, the court recognized as an aggravating circumstance that Mehringer occupied a position of trust when he committed his offense. The court also recognized as mitigating factors Mehringer's lack of criminal history and his payment of child support for G.M. following his divorce. However, the court assigned the latter circumstance minimal mitigating weight because Mehringer victimized G.M. and because both G.M. and Andrea asked for Mehringer to receive a long sentence. The court sentenced Mehringer to a nine-year term, with seven years executed in the Indiana Department of Correction ("DOC") and two years suspended to probation. The court also

found Mehringer to be an offender against children pursuant to Indiana Code section 35-42-4-11 and a sexually violent predator ("SVP") pursuant to Indiana Code section 35-38-1-7.5.

# Discussion and Decision

## I. Sufficiency of the Evidence

[10] Mehringer asserts the State did not present sufficient evidence to sustain his conviction. In assessing whether there was sufficient evidence to support a conviction, we consider the probative evidence in the light most favorable to the verdict. *Burns v. State*, 91 N.E.3d 635, 641 (Ind. Ct. App. 2018). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). "Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict." *Burns*, 91 N.E.3d at 641 (internal citation omitted).

[11] Indiana Code section 35-42-4-3 states: "A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony." Indiana Code section 35-31.5-2-221.5 defines "other sexual conduct" to include, in relevant part, "the

penetration of the sex organ or anus of a person by an object." Mehringer argues the State failed to prove he acted knowingly or intentionally. The State may prove intent through circumstantial evidence. *Lee v. State*, 973 N.E.2d 1207, 1210 (Ind. Ct. App. 2012), *trans. denied.* "Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. The fact finder is entitled to infer intent from the surrounding circumstances." *Id.* (internal citation omitted).

[12] While Mehringer maintains "the circumstantial evidence can only lead to the inference that [Mehringer's] conduct and actions were completely innocent, and in no way different than any other night," (Appellant's Br. at 20), G.M.'s reaction to Mehringer's actions demonstrates they were out of the ordinary. G.M. cried and had trouble sleeping after Mehringer left her room. She testified the digital penetration occurred for at least ten seconds and could have lasted as long as three minutes. When G.M. confronted Mehringer about the incident afterwards, he alluded to other times he sexually touched G.M. These three facts demonstrate the touching was not accidental. Mehringer notes several facts in support of his argument that he did not intend to penetrate G.M.'s vagina with his finger, including that he routinely gave G.M. massages; testimony that G.M.'s room was dark and the door was open on the night of the incident; and that G.M. did not accuse Mehringer of misconduct before December 2017. However, Mehringer is merely requesting that we reweigh the evidence, which we will not do. *See Wright v. State*, 828 N.E.2d 904, 906 (Ind.

2005) (holding defendant's sufficiency of the evidence argument was a request for the appellate court to reweigh the evidence, which it will not do).

## II. Trial Court's Sentencing Decision

[13] Mehringer contends the trial court erred in omitting proposed mitigating factors from the sentencing statement. Sentencing decisions rest within the sound discretion of the trial court, and we review such decisions for an abuse of discretion. *Hudson v. State*, 135 N.E.3d 973, 979 (Ind. Ct. App. 2019). "An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. For example, a trial court may abuse its discretion by:

> (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law.

*Id*.

[14] Nonetheless, the trial court is not required to accept the defendant's arguments regarding what constitutes a mitigating factor or assign proposed mitigating factors the same weight as the defendant. *Flickner v. State*, 908 N.E.2d 270, 273 (Ind. Ct. App. 2009). "In cases where the trial court has abused its discretion, we will remand for resentencing only 'if we cannot say with confidence that the

trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.'" *Bryant v. State*, 959 N.E.2d 315, 322 (Ind. Ct. App. 2011) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007)).

[15] Mehringer argues the trial court abused its discretion by not considering three proposed mitigating factors: (1) the crime was the result of circumstances unlikely to recur; (2) Mehringer is likely to respond affirmatively to probation or short term incarceration; and (3) Mehringer's attitude and character indicate that he is unlikely to commit another crime. In support of the argument that Mehringer would respond well to probation or work release, he points to his stable employment history and the testimony of his former coworkers that he was a trustworthy employee. Mehringer also points to his lack of previous interactions with the criminal justice system and the statements of support presented at sentencing from his friends and family members as evidence that his character and attitude make it unlikely he will reoffend. Mehringer also argues the crime was the result of circumstances unlikely to recur because he is not able to physically see G.M. due to his divorce.

[16] However, even acknowledging Mehringer's positive work history and the testimony presented on his behalf, the record fails to demonstrate that Mehringer would respond well to probation or short-term incarceration or that he is unlikely to commit another crime. While an offender's risk assessment scores should not be considered as aggravating or mitigating factors in and of themselves, they "may be considered to 'supplement and enhance a judge's

evaluation, weighing, and application of the other sentencing evidence in the formulation of an individualized sentencing program appropriate for each defendant.'" *J.S. v. State*, 928 N.E.2d 576, 578 (Ind. 2010) (quoting *Malenchik v. State*, 928 N.E.2d 564, 573 (Ind. 2010)). The Indiana Risk Assessment System placed Mehringer in the high-risk category to reoffend. During the Pre-Sentence Investigation ("PSI") interview, Mehringer reported drinking regularly from 2012 or 2013 until 2018. During this time, Mehringer indicated "[t]he only time he was sober was during work, church, and swim meets." (App. Vol. II at 37.) Also, while Mehringer had a positive work history, he lost his job with the FAA because of his felony conviction. Further, he continues to deny molesting G.M. and refuses to take responsibility for his crime. All these facts contradict Mehringer's proposed mitigating factors.

[17] While Mehringer argues his crime is the result of circumstances unlikely to recur, his offense was not an isolated occurrence. G.M. testified Mehringer inappropriately touched her twice before the incident for which he was convicted. There is no indication in the record that Mehringer's parental rights over G.M. were terminated, and he did not place the custody decree from his divorce into evidence. Accordingly, the record is unclear regarding the level of interaction with G.M. that Mehringer is allowed following the divorce. None of Mehringer's proposed mitigating factors were supported by the record, and therefore, the trial court did not abuse its discretion by omitting them from the sentencing statement. *Pennington v. State*, 821 N.E.2d 899, 905 (Ind. Ct. App.

2005) (holding proposed mitigating circumstances were not both significant and clearly supported in the record).

# III. Inappropriateness of Sentence

[18] Mehringer also argues his sentence is inappropriate given the nature of his offense and his character. We evaluate inappropriate sentence claims using a well-settled standard of review.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. App. R. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to attempt to leaven the outliers, and identify some guiding principles for the trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

*Belcher v. State*, 138 N.E.3d 318, 328 (Ind. Ct. App. 2019), *trans. denied*.

[19] When considering the nature of the offense, we first look to the advisory sentence for the crime. *Anglemyer*, 868 N.E.2d at 494. Indiana Code section 35-50-2-5 states: "A person who commits a Level 3 felony (for a crime

committed after June 30, 2014) shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." Thus, Mehringer's sentence equaled the advisory term, and the court exercised its grace and suspended two years of Mehringer's term to probation. *See Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) ("Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled."); *see also Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010) (holding appellate review under Indiana Appellate Rule 7 may consider both the number of years of a sentence and the manner in which the sentence is to be served).

[20] Mehringer argues that he "is a perfect match for a short term of imprisonment, work release, and/or probation." (Appellant's Br. at 37.) However, the nature of Mehringer's offense is more egregious than the "typical" Level 3 child molesting offense because Mehringer exploited a position of trust in carrying out his offense. As the trial court explained at sentencing,

> the position of trust that [Mehringer] had and the connection that he had to Andrea and G.M. and the family was significant and the court puts great emphasis on this position of trust. He was her father. Um, and an involved father, and so the court finds significant aggravation as it relates to that point.

(Tr. Vol. II at 30.) In addition, G.M. testified that Mehringer tried to convince G.M. not to tell Andrea about the incident by promising G.M. gifts and warning G.M. about what Andrea would do to him if she found out. Given these circumstances, we see nothing inappropriate about his nine-year sentence. *See Mise v. State*, 142 N.E.3d 1079, 1089 (Ind. Ct. App. 2020) (Court observed

the defendant "committed his offenses against two young girls with whom he shared a father-daughter relationship. He abused his position of trust with these girls and robbed them of their youthful innocence when he molested them."), *trans. denied*.

[21] As to Mehringer's character, he notes that he helped Andrea file her taxes and complete other tasks after moving out of the house. He paid his child support obligation during the pendency of the criminal proceedings against him, and he was employed throughout most of his adult life. He did not have a criminal history, and several former coworkers, family members, and friends testified or sent letters to the court on his behalf. However, the court appears to have taken these positive aspects of his character into account because he is required to serve only seven years of his nine-year sentence in the DOC. Nevertheless, while Mehringer deserves credit for seeking treatment for alcohol abuse following his divorce, his statement to Andrea the night after the incident that he could not remember what he did to G.M. and his self-report in the Pre-Sentence Investigation that he drank a fifth of rum daily before receiving treatment demonstrate that he allowed his alcohol problem to get out of control before seeking help. Consequently, we cannot say Mehringer's sentence is inappropriate given the nature of his offense and his character. *See Vega v. State*, 119 N.E.3d 193, 204 (Ind. Ct. App. 2019) (holding sentence for child molesting and child solicitation was not inappropriate given defendant's long history of marijuana use and defendant's abuse of his position of trust over the victim).

# IV. Separation of Powers

[22] Indiana's legislature proscribed that a person is an SVP by operation of law if he, being at least eighteen years of age, commits one of several enumerated offenses. Ind. Code § 35-38-1-7.5(2014) ("SVP Statute").[2] An SVP is subject to additional restrictions beyond those imposed on non-SVP sex offenders. For example, while sex offenders are generally required to register with local law enforcement for ten years, a sex offender who is also an SVP is required to register for life. Ind. Code § 11-8-8-19. In addition, while a non-SVP sex offender has seven days to register with local law enforcement upon the occurrence of any of eight statutory enumerated events, an SVP must register within 72 hours. Ind. Code § 11-8-8-7. Furthermore, local law enforcement authorities are required to contact and verify the residence of an SVP more frequently than a non-SVP sex offender. Ind. Code § 11-8-8-13.

[23] One of the enumerated offenses that automatically renders a person an SVP is a Level 3 felony child molesting conviction, Ind. Code § 35-38-1-7.5(b)(1)(C), which is the crime Mehringer committed. He argues the SVP Statute is unconstitutional because it violates the principle of separation of powers.[3]

---

[2] The statute has been amended twice, with effective dates of March 15, 2018, and July 1, 2020. These amendments do not, however, impact this appeal.

[3] The State argues Mehringer waived appellate review of his claim under Article 3, Section 1 of the Indiana Constitution because he did not raise the claim before the trial court in a motion to dismiss. However, the State's reliance on *Donaldson v. State*, 904 N.E.2d 294 (Ind. Ct. App. 2009), is misplaced. Donaldson challenged for the first time on appeal the constitutionality of the statute under which he was convicted. *Id.* at 298. Mehringer does not challenge the constitutionality of the statute under which he was convicted. Mehringer became an SVP by operation of law upon conviction, and he challenges the constitutionality of

When a party challenges a statute based upon a violation of the Indiana Constitution, our standard of review is well-settled. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. If there are two reasonable interpretations of a statute, we will choose the interpretation that permits upholding the statute.

*Stoffel v. Daniels*, 908 N.E.2d 1260, 1267 (Ind. Ct. App. 2009) (internal citation and quotation marks omitted).

[24]     Article 3, Section 1 of the Indiana Constitution states:

The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

As our Indiana Supreme Court has explained, "this provision recognizes 'that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government.'" *Lemmon v. Harris*, 949 N.E.2d 803, 814 (Ind. 2011) (quoting *State v. Monfort*, 723 N.E.2d 407, 411 (Ind. 2000)). The legislature is charged with determining which acts should be considered criminal and setting the appropriate penalties. *Id*. The

the SVP Statute. *See Burke v. State*, 943 N.E.2d 870, 873 (Ind. Ct. App. 2011) (addressing constitutional challenge on appeal even though defendant did not raise issue in motion to dismiss), *trans. denied*.

judiciary possesses the authority to affix the penalty and impose sentence on an individual convicted of a crime. *Id.*

[25] Merhringer argues the SVP Statute violates Article 3, Section 1 of the Indiana Constitution "because it usurps a traditional judicial function, that being 'determining the status of offenders and their likelihood to reoffend.'" (Appellant's Br. at 41) (quoting *Lemmon*, 949 N.E.2d at 815). He notes subsection (a) of the SVP Statute states: "As used in this section, 'sexually violent predator' means a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11-8-8-5.2)." Ind. Code § 35-38-1-7.5. Mehringer argues that by classifying every person convicted of certain offenses to be an SVP, the legislature has impermissibly encroached on the judicial function of fashioning a sentence specific to the individual offender.

[26] However, rather than imposing an indiscriminate penalty, the SVP Statute reflects the legislature's belief that the "default" status for persons convicted of certain offenses is that they should be considered SVPs. *Lemmon*, 949 N.E.2d at 815. Beginning ten years after an SVP's release from incarceration, the SVP can petition a court to remove the SVP designation. Ind. Code § 35-38-1-7.5(g). If the court chooses to conduct a hearing on such a petition, it shall appoint two psychologists or psychiatrists to evaluate whether the SVP should retain that status. *Id.* If the court is satisfied the offender should no longer be considered an SVP, the court may grant the offender's petition. *Id.* Therefore, as our Indiana Supreme Court observed in *Lemmon*, the SVP Statute "leaves to the

courts at various stages the power to determine the status of offenders and their likelihood of recidivism." 949 N.E.2d at 815. We hold the SVP Statute is not an unconstitutional legislative encroachment on judicial authority. *See id*. (holding SVP statute did not allow the executive branch to reopen final judgments in violation of the Indiana Constitution's separation of powers provision).

## V. Due Process

[27]    Mehringer contends his due process rights were violated because he was deemed an SVP by operation of law and could not rebut the statutory presumption that he is likely to reoffend. He frames his argument as a challenge to the SVP statute on vagueness grounds. Whenever the constitutionality of a statute is challenged, we begin with the presumption that the statute is constitutional. *State v. Lombardo*, 738 N.E.2d 653, 655 (Ind. 2000). "A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct." *Id*. at 656. The SVP Statute clearly lays out which offenders are designated as SVPs by operation of law. The statute lists the crimes that make an individual an SVP, and the statute also lists an exception to being considered an SVP if certain conditions are met. *See* Ind. Code § 35-38-1-7.5(h) ("A person is not a sexually violent predator by operation of law under subsection (b)(1) if all of the following conditions are met: . . . .").

[28] Mehringer was duly convicted of child molesting, and his SVP designation follows from that conviction. As explained *supra*, the SVP designation is merely a default status that an SVP can petition to have removed after ten years. *See Lemmon*, 949 N.E.2d at 815. The SVP Statute does not deprive Mehringer of his opportunity to prove that he is unlikely to reoffend. The statute just delays his opportunity to do so until he has been released from prison and functioned in society for period of time. Therefore, the SVP statute is not unconstitutionally vague, and Mehringer's due process rights were not violated when he was deemed an SVP by operation of law.

# Conclusion

[29] The State presented sufficient evidence to sustain Mehringer's conviction. Mehringer's penetration of G.M.'s vagina and his attempt to persuade G.M. not to tell Andrea about the incident indicate Mehringer intended to molest G.M. The trial court did not abuse its discretion by omitting mitigating factors in its sentencing statement, nor is Mehringer's sentence inappropriate given the nature of his offense and his character. Finally, Indiana Code section 35-38-1-7.5 does not violate either the separation of powers clause of the Indiana Constitution or Mehringer's due process rights. Therefore, we affirm the trial court's judgment.

[30] Affirmed.

Robb, J., and Vaidik, J., concur.